IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| LAURIE L. MANN, | ) |
| | ) |
| Plaintiff, | ) Civil Action No.: 6:12-cv-16 |
| | ) |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN[1], Acting | ) By: Hon. Robert S. Ballou |
| Commissioner of Social Security, | ) United States Magistrate Judge |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Laurie L. Mann, ("Mann"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not disabled and therefore not eligible for supplemental security income, ("SSI"), under the Social Security Act, ("Act"), 42 U.S.C. § 1381-1383f. Specifically, Mann alleges the Commissioner did not give appropriate weight to the opinions of her treating physician and licensed clinical social worker.

Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda and argument of counsel and the applicable law, and conclude that substantial evidence supports the ALJ's decision. As such, I **RECOMMEND DENYING** Mann's motion for summary judgment (Dkt # 11), and **GRANTING** the Commissioner's motion for summary judgment (Dkt # 12).

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is hereby substituted for Michael J. Astrue as the defendant in this suit.

1

# I.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that the claimant failed to demonstrate that she was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Mann bears the burden of proving that she suffers under a "disability" as that term is interpreted under the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience. See 42 U.S.C. § 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the

claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[2] (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

In cases such as this, where the claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, this court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. Wilkins v. Secretary, Dep't of Health and Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991).

## II.

### Social and Vocational History

Mann was born on June 28, 1973, and was a younger individual on the alleged onset date under the Act. 20 C.F.R. § 416.963(c)(2011). Administrative Record, hereinafter "R." 189. Mann received her GED and has a certificate from a business college. R. 54-55, 61. Mann worked as a Value City receiving clerk from 2000-2001, which was evaluated by a vocational

---

[2] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

3

expert as medium, semi-skilled work. R. 71. She last worked as a cashier from 2001-2003, which was evaluated by a vocational expert as light, unskilled work. R. 71. Mann reported that during the relevant period she was able to care for her teenage children, cook, wash laundry, shop for groceries and attend doctor's appointments. R. 230-32.

## Claim History

Mann filed for social security disability on April 12, 2010, claiming that her disability began on March 31, 2003, due to bipolar disorder, panic disorder, and post-traumatic stress disorder. R. 189, 216. Mann later amended her alleged disability onset date to April 12, 2010. R. 20. The Commissioner denied Mann's application at the initial and reconsideration levels of administrative review. R. 118, 131. On July 14, 2011, ALJ Mark A. O'Hara held a hearing to consider Mann's disability claim. R. 48. Mann was represented by counsel at the hearing.

On September 20, 2011, the ALJ entered his decision denying Mann's SSI claim. R. 20-43. The ALJ found that Mann's affective disorder and anxiety-related disorder were severe impairments. R. 23. Considering these impairments, the ALJ concluded that Mann retained the RFC to perform a full range of work at all exertional levels, but is limited to simple, routine, repetitive work that involves working with things more than people. R. 24. The ALJ found that Mann could not perform her past relevant work, but that there are significant jobs in the national economy that she can perform, such as cleaner, packer and laundry worker. R. 43.

After the ALJ's decision, Mann submitted to the Appeals Council a psychological report from Joanne Greene, LCSW, dated November 11, 2011, which the Appeals Council made a part of the record. R. 1-6. On February 24, 2011, the Appeals Council denied Mann's request for review, and this appeal followed. R. 1-6.

**ANALYSIS**

Mann alleges that the ALJ erred by not giving proper weight to the opinions of her treating physician, Richard Oliver, M.D., and licensed clinical social worker, Joanne Greene, who found that Mann was mentally unable to work. In determining Mann's RFC, the ALJ considered Dr. Oliver and Ms. Greene's co-signed medical source statement, but gave it little weight, finding it inconsistent with other evidence in the record, including Dr. Oliver and Ms. Greene's treatment records. R. 40-41. The ALJ gave greater weight to the opinions of the state agency reviewing and consultative physicians, who found that Mann was capable of simple, unskilled, non-stressful work.

The social security regulations require that an ALJ give the opinion of a treating source controlling weight, if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, 2011 WL 1229781 (S.D. W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, 2010 WL 6621693 (E.D. Va. Dec. 29, 2010).

With regard to Ms. Greene, licensed clinical social workers are not "acceptable medical sources" under the regulations. 20 C.F.R. § 416.913(a). However, evidence from such sources may be used to show the severity of an individual's impairment and how it affects the individual's ability to function. Social Security Ruling 06-03p. An ALJ is required to at least consider the opinion of such a non-acceptable medical source, especially when there is evidence in the record to suggest that the non-acceptable medical source had a lengthy relationship with the claimant and can present relevant evidence as to the claimant's impairment or ability to work. Foster v. Astrue, 826 F. Supp. 2d 884, 886 (E.D.N.C. 2011); Social Security Ruling 06-03p.

In this case, substantial evidence supports the ALJ's decision to give the opinions of Dr. Oliver and Ms. Greene little weight based upon the ALJ's finding that their opinions are contrary to their treatment notes and the other medical evidence of record. The relevant medical evidence is briefly summarized as follows:

On March 3, 2010, Mann first presented to Valerie Renninger, M.D., on a mental health referral. R. 454. Mann complained of sleep disturbance, low energy, feeling overwhelmed, worthless and hopeless. Dr. Renninger noted that Mann was alert, fully oriented, and normally groomed; her speech was clear and appropriate; her thought process was logical; her insight was good; and her judgment was fair. R. 454. Dr. Renninger diagnosed Mann with depression and mood disorder, prescribed medication and referred her to counseling. R. 455.

On March 10, 2010, Mann presented to Joanne Greene, LCSW, for counseling. Ms. Greene noted that Mann was appropriately dressed and adequately groomed; she was cooperative, and fully oriented; her affect was "full range, tearful, appropriate;" her mood was depressed and anxious; her insight and judgment were fair; her thought process was intact; her thought content unremarkable; and she was not suicidal or homicidal. R. 470. Ms. Greene

diagnosed mood disorder and anxiety disorder, noting that Mann likely suffered from bipolar disorder and panic disorder with agoraphobia, but those diagnoses must be confirmed by a psychiatrist. R. 470.

Mann attended more than twenty counseling sessions with Ms. Greene over the next fifteen months (through June 2011), during which Ms. Greene's mental status examinations of Mann remained substantially the same. R. 461, 463, 467, 469, 485, 489, 491, 494, 496, 498, 500, 519, 521, 526, 528, 530, 533, 537, 541, 549, 553. Ms. Greene noted throughout those sessions that Mann had multiple stressors, including "two sons with mental health problems, minimal financial supports, the recent death of her son's stepmother, and her former husband's incarceration." R. 467.

On April 12, 2010, Ms. Greene noted that she continued to develop a rapport and build a therapeutic bond with Mann, and set goals for Mann to increase her self-esteem and begin to explore blocked memories. R. 467. Ms. Greene believed that Mann needed an anxiety medication, and gave Mann information on filing an SSI application. R. 467.

On April 19, 2010, Mann presented to Dr. Oliver for her first psychiatry visit. She reported having sleep disturbances, and worsening financial and familial stressors and panic attacks. She also stated that she was experiencing mild benefits from her medication. R. 465. Dr. Oliver's mental status examination revealed that Mann was appropriately dressed and adequately groomed; she was cooperative and fully oriented; her psychomotor activity was normal; her attention was good; her affect was "full range, tearful, appropriate;" her mood was depressed and anxious; her insight and judgment were fair; her thought process was intact for the most part; she was not suicidal or homicidal; and her impulse control was fair. R. 465. Dr. Oliver assessed bipolar II disorder and panic disorder, and modified Mann's medication regimen.

7

R. 465. Over the course of the next thirteen months (through May 2011), Dr. Oliver's mental status examinations remained substantially the same. R. 459, 487, 492, 502, 504, 523, 524, 532, 539, 545, 551. Dr. Oliver's treatment notes are repetitive in general, regularly noting that Mann received "mild benefit" from her medication, tolerated her medications well, complained of familial and financial stressors, and "worried about everything." R. 459, 487, 492, 502, 504, 523, 524, 532, 539, 545, 551. On May 17, 2010, Dr. Oliver assessed bipolar II disorder, and panic disorder with agoraphobia and severe panic attacks, and modified Mann's medication regimen. R. 459.

On July 2, 2010, psychologist Loretta Braxton, Ph.D., performed a consultative examination at the request of the state agency. R. 475. Dr. Braxton noted that Mann drove herself to the evaluation and arrived promptly, had adequate hygiene and her overall physical impression was good. R. 475. During the evaluation, Mann was cooperative, alert, and fully oriented; had normal speech; her thoughts were goal-directed and logical; she maintained good eye contact; her affect was consistent and her emotional expressions were appropriate; she denied suicidal ideations and perceptual disturbances; and she demonstrated fair practical judgment and adequate insight. R. 475-78. Dr. Braxton noted that Mann began to gag as if she would vomit at the beginning of the interview, and stated that this is "what happens when I go out." Dr. Braxton also noted that Mann's "symptoms disappeared as quickly as they appeared." R. 475. Mann reported that she stopped working in 2004 because her children "needed her at home," and she cooked, cleaned, and took care of her daily living activities without assistance. R. 475-76. Mann complained of having panic attacks, crying spells, anger outbursts, and memory problems. R. 475-76.

Dr. Braxton diagnosed major depressive disorder and panic disorder with agoraphobia, and stated that "[w]ith treatment, it appears that [Mann] would be able to perform simple, routine, repetitive tasks and maintain concentration, persistence, and pace. She appears capable of understanding and retaining and following instructions." R. 478. Dr. Braxton also indicated that "[t]here is a high probability she will have difficulty getting along with her peers and coworkers and responding appropriately to supervision." R. 478.

On July 12, 2010, state agency psychologist Julie Jennings, Ph.D., prepared a mental residual functional capacity assessment, and found that Mann had no understanding and memory limitations; no sustained concentration and persistence limitations; and only moderate limitations in her ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisions. R. 92-93. Dr. Jennings concluded that Mann retained the mental residual functional capacity to do simple, unskilled work. R. 94-95. On November 18, 2010, state agency psychologist Howard S. Leizer, Ph.D., reviewed the record and confirmed Dr. Jennings's findings. R. 108-117.

On July 14, 2010, Ms. Greene noted that Mann was "pleasant" and "interacting appropriately." R. 498. Mann reported that she was taking Ambien as directed and was sleeping much better. R. 498. Mann also reported that she continued to have financial problems, serious issues with her sons, and experienced "extreme anxiety whenever she needs to leave her home." R. 498. On August 26, 2010, Ms. Greene reported that Mann was "reluctant to remember her childhood. She is aware that her mother tried to kill her sister and she fears that she will remember similar violent events herself." R. 491. Ms. Greene noted that Mann presented some symptoms of PTSD and had a history of being physically abused as a child. R. 492. On

9

September 21, 2010, Ms. Greene noted that Mann uses day to day stress to avoid confronting her past. R. 489. Ms. Greene reported similar statements in subsequent sessions. R. 485, 533, 537.

On several occasions, Ms. Greene encouraged Mann to attend an anxiety group therapy; however, Mann claimed that she was "not quite ready" to attend, and continued with individual counseling. R. 520, 522, 550, 554. On May 2, 2011 and June 13, 2011, Mann reported to Dr. Oliver that her anxiety was "somewhat stable," and her panic attacks and sleep had improved. R. 523, 545, 551.

On June 21, 2011, Ms. Greene prepared a medical source statement that was co-signed by Dr. Oliver. R. 557. Ms. Greene and Dr. Oliver found that Mann has a fair ability to remember locations and work-like procedures, understand and remember short, simple instructions, carry out short, simple instructions, and make simple, work-related decisions. They stated that she has a poor ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual, sustain an ordinary routine without special supervision, work with or near others without being distracted by them, complete a normal workday or workweek, and perform at a consistent pace. R. 557. In support of those findings, Ms. Greene and Dr. Oliver stated:

> Depressive symptoms include: anhedonia, feelings of worthlessness, feeling guilty, difficulty concentrating and indecisiveness. The inability to concentrate interferes significantly with Ms. Mann's ability to remember and complete tasks as instructed. Ms. Mann also presents with extreme irritability at times, and with alternating periods of time needing very little sleep and with sleeping for excessive hours each day.
>
> Anxiety symptoms include: hypervigilance, increased arousal and the entire spectrum of panic symptoms. This patient's anxiety interferes with her ability to maintain a normal work schedule and make everyday decisions. Ms. Mann has gagged and has had to leave the room to vomit or use the bathroom due to [illegible].

R. 557. Dr. Oliver and Ms. Greene also noted that Ms. Mann has good ability to ask simple questions, adhere to basic standards of neatness and cleanliness, and be aware of normal hazards and take appropriate precautions. They found that Mann has fair ability to interact appropriately with the public and get along with co-workers and peers, and a fair to poor ability to maintain socially appropriate behavior. Mann has poor ability to accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. R. 558. In support of those findings, they noted:

> Ms. Mann has most often been polite and appropriate at this medical clinic. She has, however, had some outbursts of anger in the waiting room when asked to wait longer than expected for an apt or when unable to have needs met as expected. Ms. Mann's anxiety about travel away from her home results in her completing only essential errands, and she plans those days to be without food so she will not vomit or have diarrhea.
>
> Although she has not been diagnosed with [p]ost traumatic stress disorder, she does present with several symptoms including: recurrent distressing dreams, sleep problems, avoidance of discussions related to childhood and spousal abuse/neglect; irritability; inability to recall her past.

R. 558.

On November 11, 2011, after the ALJ issued his decision denying Mann's claim, Ms. Greene wrote a letter to Mann's attorney stating her concerns with the ALJ's decision. Ms. Greene reiterated her opinion that Mann has high anxiety which limits her time in public, explained why her treatment notes appeared to be "boilerplate," and contested the ALJ's finding that Mann's treatment was "routine and conservative," noting Mann's sixty three visits for mental health related issues since March 3, 2010. This letter was submitted to the Appeals Council and made a part of the record. R. 1-6.

As noted above, the ALJ gave little weight to Dr. Oliver and Ms. Greene's medical source statement, finding that it is not supported by Mann's generally unremarkable mental

11

status examinations, routine and conservative treatment, and the other opinions of record. The ALJ instead adopted the opinions of Drs. Braxton, Jennings and Leizer, finding them to be consistent with other credible evidence of record. The ALJ accounted for Mann's severe psychological impairments by limiting Mann to simple, routine, repetitive work that involves things more than people.

Mann takes issue with the ALJ's characterization of her treatment as "routine and conservative," and asks that the court reverse the ALJ's decision based upon the length of Mann's treatment with Dr. Oliver and Ms. Greene, the consistency of her signs and symptoms, and the alleged severity of her psychological conditions. Essentially, Mann is asking the court to re-analyze the facts and re-weigh the evidence; a task this court is prohibited from performing under the substantial evidence standard of review. The issue on appeal is not whether it is plausible that a different fact finder could have drawn a different conclusion or even if the weight of the evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence. So long as this standard—defined as more than a mere scintilla but perhaps somewhat less than a preponderance—is met, I cannot recommend reversing the ALJ. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted).

The ALJ's opinion contains a very thorough analysis of Mann's subjective complaints and medical treatment. Indeed, Mann's mental health treatment has been generally conservative, mostly involving counseling sessions with Ms. Greene, a social worker, and routine medication checks with Dr. Oliver. R. 40. Mann did not require psychiatric hospitalization, inpatient treatment, or more frequent or intensive outpatient care. Additionally, as the ALJ noted, Mann's mental status exams were generally unremarkable, aside from Mann reporting depressed and anxious moods. R. 500, 498, 489, 487. While there is no question that Mann suffered from

12

severe psychological impairments, neither Dr. Oliver nor Ms. Greene's treatment notes contain evidence of work-preclusive mental or functional limitations. Mann's diagnoses of bipolar disorder and panic disorder alone are insufficient to establish disability. See Hays v. Sullivan, 907 F.2d 1453, 1458 (4th Cir. 1990); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)(A claimant may not rely upon a diagnosis alone to show disability, but instead must show functional limitations associated with such diagnoses resulting in an inability to perform substantial gainful activity.); Price v. Barnhart, CIV.A. 7:04CV741, 2005 WL 3477547, at *6 (W.D. Va. Dec. 13, 2005).

Further, the ALJ recognized that Mann suffered from severe psychological impairments, and accounted for those impairments by limiting Mann to simple, routine, repetitive work that involves things more than people. Given the evidence set forth above, I find substantial evidence to support the ALJ's decision to give Dr. Oliver and Ms. Greene's opinions little weight when developing Mann's RFC.

## **CONCLUSION**

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. In recommending that the final decision of the Commissioner be affirmed, I do not suggest that Mann is totally free from any distress. The medical record simply fails to document the existence of any mental conditions which would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Mann's claim for benefits and in determining that her mental impairments would not prevent her from performing any work. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Accordingly,

I recommend that the Commissioner's decision be affirmed, the defendant's motion for summary judgment be **GRANTED**, and Mann's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Entered: August 5, 2013

/s/ Robert S. Ballou

Robert S. Ballou
United States Magistrate Judge